# In the United States District Court
# For the Southern District of Georgia
# Brunswick Division

OCTOPUS LLC,                          *
                                      *
           Plaintiff,                 *          CV2:15-cv-64
                                      *
    v.                                *
                                      *
HEALTHY PET, L.P.,                    *
                                      *
           Defendant,                 *
                                      *
    v.                                *
                                      *
THOMAS PLETCHER,                      *
                                      *
           Third-Party Defendant.     *

## ORDER

Presently before the Court is Defendant Healthy Pet, L.P.'s Motion to Dismiss, dkt. no. 7, and Motion to Transfer Venue, dkt. no. 19. For the reasons stated below, Defendant's Motion to Dismiss is **DISMISSED** as moot, and Defendant's Motion to Transfer Venue is **GRANTED**. Accordingly, this cause of action is hereby **TRANSFERRED** to the United States District Court for the Western District of Washington, Seattle Division.

### BACKGROUND

Healthy Pet produces a variety of natural pet products, including litter and pet bedding. Dkt. No. 19-1, ¶ 1. It is a

limited partnership organized under the laws of the State of Delaware, with its principal place of business in Ferndale, Washington. Dkt. No. 10, ¶ 3; Dkt. No. 16, ¶ 3. Thomas Pletcher, a former employee of Healthy Pet, served as Healthy Pet's director of marketing and was responsible for managing Healthy Pet's marketing operations. Dkt. No. 16, p. 5. During his employment, Mr. Pletcher split his working time between his Tennessee home and Healthy Pet's Washington headquarters. Dkt. No. 19-1, ¶ 2.1.

Plaintiff Octopus LLC, a social-media marketing business, is a limited liability company located in Tennessee and owned by Charity Pletcher, Mr. Pletcher's spouse. Dkt. No. 19-2, ¶¶ 2-4; id. at pp. 7, 10. During his employment with Healthy Pet, Mr. Pletcher allegedly engaged Octopus to do marketing work for Healthy Pet. Dkt. No. 19, p. 3; Dkt. No. 10, ¶ 11. Healthy Pet alleges that Mr. Pletcher was authorized to sign checks to Octopus—without additional approval—for amounts under $10,000. Dkt. No. 16, p. 6 ¶ 9.

Healthy Pet alleges that its Code of Business Conduct and Ethics and Employee Manual prohibits its employees, including Mr. Pletcher, from having a material economic interest in or other business connection with a supplier or customer. Id. at p. 5 ¶ 3. When Healthy Pet discovered that Octopus was owned by

Mrs. Pletcher, it terminated Mr. Pletcher's employment and its relationship with Octopus. Id. at p. 7 ¶¶ 15-19.

Octopus provided Healthy Pet with invoices totaling approximately $758,464.98 for services it allegedly performed on behalf of Healthy Pet. Id. at p. 2 ¶ 11. Of that amount, Healthy Pet paid Octopus $611,944.37. Id. Healthy Pet asserts it is not liable for the remaining amount, and, in fact, that Octopus inflated and/or fabricated some of the invoices. Id. at p. 6, ¶ 8. Healthy Pet alleges that Octopus took deliberate actions designed to obscure Octopus' inflated billing, including sending invoices "on an irregular basis in an attempt to ensure that the amount of any given invoice remained below $10,000" so that Mr. Pletcher could authorize their payment by Healthy Pet without additional approval. Id. at p. 6, ¶¶ 8-10. Healthy Pet believes Mrs. Pletcher and Octopus provided few services relative to the money they received from Healthy Pet. Dkt. No. 19, p. 3; Dkt. No. 19-1 ¶¶ 2.4-2.5.

In the Amended Complaint, dkt. no. 10, Octopus asserts a breach of contract claim, or, in the alternative, an unjust enrichment claim against Healthy Pet. Dkt. No. 10, pp. 4-5. In the Counterclaim, Healthy Pet asserts against Octopus claims for fraud/misrepresentation, breach of the duty of good faith and

fair dealing, aiding and abetting, civil conspiracy, and unjust enrichment.[1] Dkt. No. 16, pp. 6-9.

Defendant Healthy Pet's pending Motion to Dismiss, dkt. no. 7, was filed in response to Octopus' initial Complaint, dkt. no. 1. Because the initial Complaint was superseded by the Amended Complaint, and because Healthy Pet has notified the Court of its intent to withdraw the Motion to Dismiss, Healthy Pet's Motion to Dismiss, dkt. no. 7, is **DISMISSED** as moot. The only remaining motion pending before the Court is Healthy Pet's Motion to Transfer Venue. Dkt. No. 19.

## DISCUSSION

I. **Rule**

Title 28 U.S.C. Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under Section 1404(a), a court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org, Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).

---

[1] In its initial Answer/Counterclaim, dkt. no. 6, Healthy Pet asserted against Mr. Pletcher cross-claims of breach of the duty of loyalty and civil conspiracy. Dkt. No. 6, pp. 8-9. Healthy Pet has since notified the Court of its desire to dismiss its claims against Pletcher, dkt. no. 17, citing jurisdictional concerns, dkt. no. 19, pp. 1-2; see also 19-2, ¶ 6. The Court accordingly **DISMISSES** those claims without prejudice.

District courts are vested with broad discretion in weighing conflicting arguments regarding a venue transfer. See England v. ITT Thompson Indus. Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).  Courts traditionally afford considerable deference to a plaintiff's choice of forum, disturbing it only where it is "clearly outweighed by other considerations." Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)). Thus, a party who moves to transfer venue pursuant to Section 1404(a) bears the burden of establishing "that the balance of convenience and justice 'weighs heavily in favor of the transfer.'" Duckworth v. Med. Electro-Therapeutics, Inc., 768 F. Supp. 822, 831 (S.D. Ga. 1991) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501 (N.D. Ga. 1989)).

"The question of whether a transfer is appropriate depends upon two inquires: (1) whether the action might have been brought in the proposed transferee court, and (2) whether [certain] convenience factors are present to justify the transfer." Greely v. Lazer Spot, Inc., No. CV 411-096, 2012 WL 170154, at *2 (S.D. Ga. Jan. 19, 2012) (citing Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)).  The convenience factors include the following:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## II. Analysis

The parties agree that venue is proper in the Southern District of Georgia. Dkt. No. 10, ¶ 9; Dkt. No. 16, ¶ 9. It also appears to be undisputed that the present action could have been brought in the Western District of Washington, Seattle Division, where Healthy Pet requests this case be transferred. See Dkt. No. 19, p. 1; Dkt. No. 23, p. 2. Thus, at issue is whether the nine convenience factors justify transferring this case to the Western District of Washington for resolution.

### A. The Convenience of the Witnesses

Convenience of the witnesses is the most important factor to consider under Section 1404(a). Duckworth, 768 F. Supp. at 831; see also Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("The convenience of the witnesses is of great importance to the decision to transfer venue from one forum to another[.]" (citing McNair v. Monsanto Co., 279 F.

Supp. 2d 1290, 1311 (M.D. Ga. 2003))). Nevertheless, courts afford less weight to witnesses who closely align with either party, as it is presumed that these witnesses are more willing to testify in a different forum. See Ramsey, 323 F. Supp. 2d at 1356 (citing Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)). Instead, "the focus of the Court should be on the convenience of 'key witnesses'"—witnesses "which have information regarding the liability of Defendant[s]." Id. at 1356-57.

In support of its motion, Healthy Pet argues that witnesses with relevant information reside in the Western District of Washington. Mr. Pletcher's former supervisors and all members of Healthy Pet's accounting department are Washington residents. Dkt. No. 19-1, ¶ 3.1. According to Healthy Pet, its former CFO, former Director of Sales, former Director of Human Resources, and former Vice President have relevant knowledge of the claims asserted in this lawsuit, and all live in Washington. Id. Though Healthy Pet operates a production facility in Jesup, Georgia, it is aware of no employee located there who would be a witness to or aware of the facts giving rise to this case. Dkt. No. 19, pp. 3-4; Dkt. No. 19-1, ¶¶ 3.1, 3.4.

In response, Octopus argues that geographic considerations for witnesses favor Brunswick over Seattle. Octopus believes it will need to rely at trial on the testimony of several third-

party subcontractors who live in Nashville and "actually performed the services at issue" in the Complaint and Counterclaim.  Dkt. No. 23, pp. 6; 23-1.

Octopus argues that travel for those witnesses from Nashville to Brunswick will be less burdensome than travel from Nashville to Seattle.  Dkt. 23, p. 10.  It argues:

> While there would no doubt be some unavoidable amount of inconvenience to these witnesses in requiring their testimony at a trial in Brunswick, the inconvenience to them would be significantly increased by requiring their attendance at a trial in Seattle, Washington – approximately two thousand miles from Nashville – given the relatively greater costs of travel to and lodging in Seattle over Brunswick, and the feasibility for these witnesses to control those costs if needed by driving to Brunswick from Nashville rather than flying.

Dkt. No. 23, p. 7.

While the sheer proximity of Brunswick might be slightly more convenient than Seattle for Octopus' subcontractors located in Nashville, Octopus ignores the fact that having a Brunswick venue means significant travel for <u>both</u> parties' witnesses.  In fact, the gravamen of Octopus' opposition to Healthy Pet's motion is that witnesses are located in or around Nashville, <u>not</u> Georgia.  Yet, Octopus chose to file this lawsuit in the Southern District of Georgia, not the Middle District of Tennessee where Nashville is located.  Indeed, nowhere in its response does Octopus refute Healthy Pet's assertion that no witnesses are located in Georgia.  <u>See</u> Dkt. No. 19-1, ¶ 3.1.

Both Healthy Pet and Octopus present witnesses who can fairly be considered "key witnesses" because their testimonies regarding the events and investigation surrounding the billing and payment of Octopus' purported services may be relevant in determining both Octopus' and Healthy Pet's liability for breach of contract and the like.  Additionally, because many witnesses are either former employees of Healthy Pet—the former CFO, Director of Sales, Director of Human Resources, and Vice President—or former subcontractors of Octopus, dkt. no. 19-1, ¶ 3.1, dkt. no. 23, p. 6, consideration of the witnesses' alignment to the parties results in a draw.

As such, it appears that transferring this action to the Western District of Washington, Seattle Division will result in less overall travel and expense and decrease the travel burden on many witnesses.  Though witnesses located in Nashville will be required to travel a greater distance to Seattle compared to Brunswick, the Court finds that a Nashville witness who would have had to fly or drive to Brunswick will not be significantly inconvenienced by taking a similar amount of time to fly to Seattle.  See, e.g., In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("Because a substantial number of material witnesses reside within the transferee venue . . . , and no witnesses reside within the [transferor venue], the district court clearly erred in not determining this factor to weigh

substantially in favor of transfer," even where the transferor venue was "centrally located[.]").

### B. The Location of Relevant Documents and Ease of Access to Sources of Proof

"In evaluating access to sources of proof, the Court looks to the location of documents and other tangible materials and the ease with which the parties can transport the materials to trial." Spanx, Inc. v. Times Three Clothier, LLC, No. 1:13-CV-710-WSD, 2013 WL 5636684, at *2 (N.D. Ga. Oct. 15, 2013) (citing Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010)). Oftentimes, "trial will be facilitated by having the forum in close proximity to such evidence." Ramsey, 323 F. Supp. 2d at 1357 (citing Haworth, 821 F. Supp. at 1479 n.2).

Here, the parties are in apparent disagreement over the location of the documentary evidence most relevant to the claims in this case. For example, Healthy Pet apparently asserts Mr. Pletcher's personnel file and various accounting records, which are located in Washington, are relevant to the case. See Dkt. No. 19, p. 6; Dkt. No. 19-1, ¶ 3.3; Dkt. No. 23, p. 9. Octopus disputes that Mr. Pletcher's personnel file is relevant to what it calls the "central issues of this case," that is, "whether Octopus actually performed the services at issue . . . or whether Octopus inflated its billings." Dkt. No. 23, p 8.

Despite Octopus' argument to the contrary, Mr. Pletcher's personnel file would be relevant to the issues of this case if and when Healthy Pet reasserts cross-claims against Mr. Pletcher, as Healthy Pet has stated it intends to do. See Dkt. No. 19, pp. 7-8. For example, Mr. Pletcher's personnel file is relevant to his knowledge of and agreement to abide by Healthy Pet's Code of Business Conduct and Ethics and Employee Manual, which purportedly prohibits employees from having a material economic interest in or other business connection with a supplier such as Octopus. Dkt. No. 16, p. 5 ¶ 3.

Though Octopus asserts the "great majority of relevant documentary evidence is in fact likely in the possession of Octopus" rather than Healthy Pet, it also admits those documents are located in Nashville, Tennessee, not Brunswick, Georgia. Dkt. No. 23, p. 9. Healthy Pet is not aware of any relevant documents or evidence located in Georgia, dkt. no. 19-1, ¶ 3.3, and Octopus has not challenged such an assertion.

The Court notes that the parties reference relatively few documents that will be relevant to the issues in this case. Additionally, neither party argues that it would be a burden to produce these documents in either venue. Accordingly, because relevant documents are actually located in Washington and not in Brunswick, this factor weighs slightly in favor of transferring

this case to the Western District of Washington, Seattle
Division.

C.      **The Convenience of the Parties**

While courts afford a considerable amount of deference to a
plaintiff's choice of forum, Robinson, 74 F.3d at 260, the
plaintiff's choice of forum "is entitled to less weight when
none of the parties resides there," Ramsey, 323 F. Supp. 2d at
1355 (citing Haworth, Inc., 821 F. Supp. at 1479).  In addition,
it is assumed that the party moving for a venue transfer has
determined that the transferee court will be a more convenient
forum for it.  See Pergo, Inc. v. Shaw Indus., Inc., No. 1:03-
CV-1709-BBM, 2003 WL 24129779, at *2 (N.D. Ga. Sept. 16, 2003).
However, to justify transfer, the "inconvenience of the present
forum to the moving party [must] substantially outweigh[] the
inconvenience of the proposed alternative forum to the non-
moving party."  Spanx, Inc., 2013 WL 5636684, at *2.  "The Court
may not simply shift inconvenience from one party to the other."
Id.

The parties agree Healthy Pet "is doing business" in the
Southern District of Georgia and resides here for purposes of
venue. See 28 U.S.C. § 1391(c) (stating that an entity resides,
for purposes of venue, "in any judicial district in which it is
incorporated or licensed to do business or is doing business").
The Court is not inclined to give this factor great weight under

the circumstances presented, however, because a Southern
District of Georgia venue is convenient for neither party.
Although both parties acknowledge that Healthy Pet operates a
manufacturing facility in Jesup, Georgia, they also agree that
the facility "is not a nexus for the events giving rise to th[e]
claim[s]." Dkt. No. 23, p. 10; see also Dkt. 19, p. 1.

As for Octopus, it is based in Brentwood, Tennessee, just
south of Nashville, over 500 miles from Brunswick. See Dkt. No.
19-2, ¶ 3 & Ex. C. Octopus asserts, however, that "tending to
litigation in [the Southern District of Georgia] would not be
particularly inconvenient for Healthy Pet, and Nashville-based
Octopus greatly prefer[s] to litigate its case only a few
hundred miles from home, rather than on the other side of the
continent." Dkt. No. 23, p. 2 (emphasis added).

Octopus' argument is not persuasive. Regardless of whether
venue is set in the Southern District of Georgia or the Western
District of Washington, one party will have to litigate "on the
other side of the continent." Octopus' opposition to Healthy
Pet's motion to transfer essentially argues that Brunswick,
Georgia is the better venue because it is closer to Nashville
(where Octopus, documents, and witnesses are located) than
Washington (where Healthy Pet, documents, and witnesses are
located). The Court cannot ignore, however, that a Brunswick
venue would require significant travel for both parties.

Accordingly, this factor weighs in favor of transfer to the
Western District of Washington, Seattle Division.

D.  **The Locus of Operative Facts**

"The 'locus of operative facts' has been interpreted as the
place where events and actors material to proving liability are
located." See Seltzer v. Omni Hotels, No. 09 Civ.
9115(BSJ)(JCF), 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30,
2010). "[C]ourts routinely transfer cases when the principal
events occurred and the principal witnesses are located in
another district." Id. (quoting In re Nematron Corp. Sec.
Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)). However,
where there is no single locus of the operative facts, this
factor is neutral and does not support a transfer. See Smith v.
Dollar Tree Stores, Inc., No. 1:11-CV-02299-SCJ, 2012 WL
12343344, at *4 (N.D. Ga. May 10, 2012).

The Court notes the following:

- Healthy Pet's marketing is generally overseen and
  orchestrated by its management team in Ferndale,
  Washington.  Dkt. No. 19-1, ¶ 1.

- When employed as Healthy Pet's director of marketing, Mr.
  Pletcher worked from Healthy Pet's Washington office for
  one week per month but otherwise worked from his Tennessee
  home.  Dkt. No. 19-1, ¶ 2.1.

- Mr. Pletcher had no work responsibilities in Georgia.  Id.

○ Octopus asserts it rendered the services at issue at its
principal place of business in the Middle District of
Tennessee.  Dtk. No. 23, p. 2.

It seems there are two possible loci of operative facts in
this case:  the Western District of Washington (where Healthy
Pet is located) and the Middle District of Tennessee (where
Octopus is located).  Octopus did not file suit in either of
those places but instead filed suit in the Southern District of
Georgia where no facts giving rise to this litigation occurred.
Accordingly, this factor weighs in favor of transfer to the
Western District of Washington, Seattle Division.

### E.    The Availability of Process to Compel the Attendance of Unwilling Witnesses

Pursuant to Federal Rule of Civil Procedure 45(c)(1), "[a]
subpoena may command a person to attend a trial" only if the
trial is either "within 100 miles of where the person resides,
is employed, or regularly transacts business in person"; or
"within the state where the person resides, is employed, or
regularly transacts business in person," only if such person "is
a party or a party's officer" or "would not incur substantial
expense."

Based on the limited information provided by the parties,
it appears the Court would have no authority under Rule 45(c)(1)
to subpoena witnesses living in either Washington or Tennessee

to attend court in Georgia.  All witnesses who have been identified thus far do not reside or work in Georgia and live well beyond 100 miles from Brunswick.  If this case were transferred to the Western District of Washington, Seattle Division, that court would have the power to subpoena at least some of the witnesses identified by Healthy Pet.  This factor weighs in favor of transfer.

F.   The **Relative Means of the Parties**

Healthy Pet asserts that "[t]he relative means of Healthy Pet and Octopus are not clear.  What is clear is that a Georgia forum will be a drain on both."  Dkt. No. 19, p. 7.  Healthy pet's argument is insufficient in this regard, as the "relative means of the parties" factor calls for a distinct inquiry into the parties' financial means.  Based on the information before the Court, the Court cannot conclude with any certainty that either party is financially better able to litigate in this District or in the Western District of Washington.  Thus, it appears that the relative means of the parties has no effect on this evaluation, and this factor favors neither party.

G.   **A Forum's Familiarity with the Governing Law**

The parties appear to agree that the claims, counterclaims, and cross-claims in this case will involve application of either Tennessee or Washington law, not Georgia law.  While those cases of action do not appear particularly complex, the applicable law

will be something other than Georgia law.  This factor weighs
slightly in favor of transfer.

  **E.** **The Weight Accorded a Plaintiff's Choice of Forum**

  A court "must not disturb the plaintiff's choice of forum
unless that choice is clearly outweighed by other
considerations."  Duckworth, 768 F. Supp. at 831 (citing Howell
v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)).  Nevertheless,
the significance of a plaintiff's choice of forum is diminished
when the forum selected is not the home district of any parties
to the action.  Ramsey, 323 F. Supp. 2d at 1355 (citing Haworth,
Inc., 821 F. Supp. at 1479).  In addition, the choice of forum
is "afforded little weight if the majority of the operative
events occurred elsewhere."  AGSouth Genetics LLC v. Terrell
Peanut Co., No. 3:09-CV-93 (CDL), 2009 WL 4893588, at *4 (M.D.
Ga. Dec. 9, 2009) (quoting Escobedo v. Wal-Mart Stores, Inc.,
No. 3:08-CV-105 (CDL), 2008 WL 5263709, at *3 (M.D. Ga. Dec. 17,
2008)).  "In those instances, no party is particularly
inconvenienced by a transfer."  Aeroquip Corp. v. Deutsch Co.,
887 F. Supp. 293, 294 (S.D. Ga. 1995).

  The Southern District of Georgia is not the home forum of
any party.  While this District is in closer proximity to
Octopus' home forum than the proposed venue of the Western
District of Washington, close proximity does not render this
District its home forum and is not part of the deference

inquiry. Moreover, it is significant that the locus of operative facts lies elsewhere. Under these circumstances, Octopus' choice of this forum carries little weight. Thus, this factor is at best neutral and does not weigh in either party's favor.

### I.    Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances

In evaluating this factor, "the Court looks at whether the case may be resolved more expeditiously in the alternative forum." Spanx, Inc., 2013 WL 5636684, at *5. Several factors may be relevant to this inquiry: "access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view [of relevant premises], and all other practical problems that make trial of a case easy, expeditious and inexpensive." Ramsey, 323 F. Supp. 2d at 1357 (quoting Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998)). "Courts also consider the inherent interest . . . 'in having localized controversies decided at home.'" Pergo, Inc., 2003 WL 24129779, at *3 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)).

First, considering the totality of the circumstances, it appears that this case would be resolved more expeditiously in the Western District of Washington, Seattle Division. No parties or witnesses are located in Brunswick. At least one

party (Healthy Pet) and a few witnesses live in Washington.  See supra Subparts II.A, C.  Thus, trying this case in the Western District of Washington would prevent unnecessary travel and expense for those individuals, decreasing the overall litigation costs of the parties.  As a result, trial efficiency weighs in favor of transferring this case to the Middle District.

Second, it appears that transfer would be in the interests of justice.  Because the locus of operative facts lies, at least partly, in the Western District of Washington, as discussed in Subpart II.D, the court there has an inherent interest in having this localized controversy decided in that forum.  See Pergo, Inc., 2003 WL 24129779, at *3.  Additionally, a transfer to the Western District of Washington, particularly at this early stage in litigation, would not impede or otherwise delay the progress of this case.

Furthermore, transferring this case to the Western District of Washington would allow Healthy Pet to pursue its cross-claims against Mr. Pletcher in the same litigation.[2]  Though Octopus argues that Healthy Pet's intended claims against Mr. Pletcher are time-barred, the Court is persuaded that Healthy Pet will be able to pursue those claims in the Western District of Washington—where it appears Mr. Pletcher is subject to personal

---

As noted supra, n.1, Healthy Pet voluntarily dismissed, without prejudice, its cross-claims against Mr. Pletcher, citing concerns that he is not subject to personal jurisdiction in the Southern District of Georgia.

jurisdiction—as those claims are defensive in nature and in response to claims made by Octopus against Healthy Pet. Bull v. United States, 295 U.S. 247, 262 (1935) ("[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely."). Indeed, based on the limited information before the Court, it appears Mr. Pletcher is not subject to personal jurisdiction in Georgia, and Octopus has not asserted otherwise. Dkt. No. 19-2, ¶ 6 & Ex. F (noting that Octopus' counsel stated the basis for personal jurisdiction over Mr. Pletcher in the Southern District of Georgia is "not clear" to him). Accordingly, the Court finds this factor weighs in favor of transfer to the Western District of Washington, Seattle Division so that all claims, counterclaims, and cross-claims can be adjudicated in a single forum where all parties are subject to jurisdiction.

## CONCLUSION

Healthy Pet has carried its burden of demonstrating that the balance of the foregoing factors substantially weighs in favor of transferring this case. Section 1404(a) contemplates the transfer for the "convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). As discussed above, the Western District of Washington, Seattle

Division is a much more convenient forum for many witnesses, is home to one of the parties, and many facts which gave rise to the claims asserted in this case occurred there. The Court acknowledges that Seattle is a greater distance from Nashville—where Octopus and many witnesses are located—than Brunswick. However, the effort to travel to Seattle from Nashville is not that much greater than the effort to travel from Nashville to Brunswick to litigate in this District. Indeed, Octopus could have filed this suit in the Middle District of Tennessee where Nashville is located, but, for whatever reason, did not do so. Because the relevant factors under Section 1404(a) favor a transfer of venue, Healthy Pet's Motion, dkt. no. 19, is GRANTED. Healthy Pet's motion to dismiss, dkt. no. 7, is DISMISSED as moot. This case is due to be **TRANSFERRED** to the Western District of Washington, Seattle Division.

SO **ORDERED**, this _____ day of _____, 2016.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)